**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KOLATH HOTELS AND
CASINOS, INC.,**

              **Appellant,**        1:17-cv-883
                                    (GLS)

        v.

**COUNTY OF GREENE,
NEW YORK,**

              **Appellee.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE APPELLANT:** | |
| The Sgambettera Law Firm<br>480 Broadway, Suite 316<br>Saratoga Springs, NY 12866 | MATTHEW J. SGAMBETTERA,<br>ESQ. |
| DeLorenzo Law Firm<br>The Lupe Building<br>670 Franklin Street, Suite 100<br>Schenectady, NY 12305 | RICHARD H. WEISKOPF, ESQ. |
| **FOR THE APPELLEE:** | |
| Greene County Attorney<br>411 Main Street<br>Catskill, NY 12414 | EDWARD I. KAPLAN, ESQ. |
| Schiller, Knapp Law Firm<br>950 New Loudon Road<br>Suite 109<br>Latham, NY 12110 | JOHN MICHAEL DUBUC, ESQ. |
| Goldman Attorneys PLLC | PAUL J. GOLDMAN, ESQ. |

255 Washington Avenue Extension
Albany, NY 12205

**Gary L. Sharpe
Senior District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Appellant Kolath Hotels and Casinos, Inc. (hereinafter "Kolath") appeals from an order of Bankruptcy Court (Littlefield, J.), which granted appellee County of Greene, New York's motion for judgment on partial findings after a bench trial. (Dkt. No. 3, Attach. 12; Dkt. No. 6, Attach. 1 at 103.) For the reasons that follow, Bankruptcy Court's order is affirmed.

**II. Background**

This controversy centers around Kolath's former property in the Town of Catskill, which previously included an operational hotel (hereinafter the "property"). (Dkt. No. 6, Attach. 1 at 41.) Since December 2013, the property has been condemned as an unsafe structure because it lacked basic building services required for human habitation. (*Id.* at 27, 41-47.) Given Kolath's failure to pay property taxes, there was an aggregate unpaid balance due to the County in the approximate amount of $830,000. (Dkt. No. 53 ¶ 2, Bankr. Ct. Case No. 16-90033-1.)

On June 9, 2016 (hereinafter the "vesting date"), the Greene County Court granted summary judgment to the County in an *in rem* tax foreclosure proceeding, such that title to the property vested in the County in satisfaction of the outstanding real property tax liens. (*Id.* ¶¶ 1-3.)

On November 22, 2016, Kolath commenced an adversary proceeding under 11 U.S.C. § 548 seeking to avoid transferring title to the County under the theory that it was a fraudulent conveyance. (Dkt. No. 1, Bankr. Ct. Case No. 16-90033-1.) Both parties filed motions for summary judgment, which were denied by Bankruptcy Court. (Dkt. Nos. 23, 26, 40, 41, Bankr. Ct. Case No. 16-90033-1.)

On July 25, 2017, a bench trial was held. (*See generally* Dkt. No. 6, Attach. 1.) Kolath presented testimony from three lay witnesses and one expert witness regarding the appraisal of the property. (*See id.* at 12, 22, 40, 60.) Kolath's President, Annie Kolath, testified regarding the physical condition of the property, but did not testify regarding its value on the vesting date.[1] (*Id.* at 40-59.) Kolath's appraisal expert, Scott Bellcourt, testified regarding a restricted appraisal report, prepared in July 2016, that hypothetically valued the property as a "going concern" in the amount of

---

[1] Neither party discusses the testimony of the other two lay witnesses.

$3,900,000.  (*Id.* at 63, 77.)

When Kolath rested, the County moved for a directed verdict, which the court construed as a motion for judgment on partial findings under Fed. R. Civ. P. 52(c).  (*Id.* at 103; Dkt. No. 3, Attach. 12 at 2.)  Bankruptcy Court granted the County's motion based upon Kolath's failure to meet its burden under 11 U.S.C. § 548 to prove that it received less than a reasonably equivalent value in exchange for transfer of the property to the County and that it was insolvent on the vesting date.  (*Id.*)  Kolath thereafter appealed seeking reversal of Bankruptcy Court's decision in its entirety and a remand for further hearing.  (Dkt. No. 1; Dkt. No. 15 at 12.)

### III. <u>Standard of Review</u>

District courts have jurisdiction to hear both interlocutory and final appeals from orders of the bankruptcy court.  *See* 28 U.S.C. § 158(a).  In exercising its appellate jurisdiction, the district court distinguishes between findings of fact and conclusions of law; reviewing the former under the "clear error" standard, and the latter *de novo*.  *R² Invs., LDC v. Charter Commc'ns, Inc.*, 691 F.3d 476, 483 (2d Cir. 2012).  Given that, as appellant agrees, "[t]he issues presented in this appeal are findings of fact," (Dkt. No. 15 at 1), the court reviews only for clear error.  *See United*

4

*States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). After applying this standard to the questions of fact, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## IV. Discussion

Section 548 permits a trustee[2] to avoid transfers of an interest in property within two years of the date on which the petition was filed under certain circumstances. In particular, as relevant here, the statute provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within [two] years before the date of the filing of the petition, if the debtor voluntarily or involuntarily— . . .
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation
> > . . . .

11 U.S.C. § 548. Kolath argues that reversal is required because

---

[2] Pursuant to 11 U.S.C. § 1107(a), a debtor in possession has all the rights of a trustee.

5

Bankruptcy Court clearly erred "in ruling that [it] failed to produce evidence to establish that it was insolvent on the date of the transfer of the [p]roperty to the County; and [it] received less than a reasonably equivalent value in exchange for such transfer of the [p]roperty to the County." (Dkt. No. 15 at 5.) Specifically, Kolath argues that Bankruptcy Court overlooked evidence establishing that (1) the value of the property was either $3,900,00 or $1,872,000 on the vesting date, so the County's purchase price of $830,000 resulted in it receiving less than a reasonably equivalent value for the property and (2) Kolath had debts totaling $4,395,290.42 which surpassed the assessed value of its sole property, proving it was insolvent on the vesting date. (*Id.*) However, the record is clear that Bankruptcy Court did not overlook any evidence, rather it appropriately found that the evidence was entitled to no deference.

**A.** **Reasonably Equivalent Value (11 U.S.C. § 548(a)(1)(B)(i))**

In support of its position, Kolath relies on the appraisal report of Bellcourt, (Dkt. No. 3, Attach. 4 at 5-7), a stipulation of settlement contained within a May 10, 2016 decision by the Greene County Court, (*id.* at 13-21), and the pre-trial stipulation of facts the parties submitted to Bankruptcy Court, (Dkt. No. 53, Bankr. Ct. Case No. 16-90033-1.) Kolath

6

argues that this evidence "established that the value of the [p]roperty was $1,872,000[] on the [vesting date]" and "demonstrated that [Kolath] received less than a reasonably equivalent value in exchange for such transfer." (Dkt. No. 15 at 10-11.) Kolath concludes that Bankruptcy Court's failure to consider the figure contained within the stipulation of settlement as the assessed value of the property at the vesting date was clearly erroneous. (*Id.* at 11.) The court disagrees.

First, there is no dispute that Kolath relied on an appraisal at trial that appraised the property as a going concern, even though the business was not operational. (Dkt. No. 6, Attach. 1 at 77.) Not only was the property condemned, (*id.* at 44-45), but most of its doors were bolted shut with steel plates, (*id.* at 13), glass on an exterior window was shattered, (*id.* at 16-17), there was room damage including toilets missing from rooms, (*id.* at 109), and signs of neglect and disrepair, (*id.* at 79). Furthermore, there was no testimony regarding the scope of the renovations required to make the property operational or a valuation of the cost to cure these defects that could serve as a reliable estimate of the property's "as is" value. *Cf. Matter of AG Properties of Kingston, LLC v. Town of Ulster Assessor*, 138 A.D.3d 1273, 1275 (3d Dep't 2016) ("Under th[e] 'cost to cure' analysis, it is

7

necessary to both identify the scope of work needed and the corresponding cost."). As such, Bankruptcy Court's decision to "ascribe no credibility, no value to the appraisal" was proper because there was no basis in the record "to interpret the going concern value when there [was] no going concern . . . on the date of the transfer to see if there was reasonably equivalent value." (Dkt. No. 6, Attach. 1 at 107.) The court finds no error in Bankruptcy Court's finding that it would be "ludicrous" to rely on an appraisal valuing the property as a going concern, when there was no going concern. (*Id.* at 114.)

Next, Kolath's alternative reliance on the estimated property value of $1,872,000[3] derived from the stipulation of settlement in the May 2016 Greene County Court case, (Dkt. No. 3, Attach. 4 at 13-21), is misplaced for the reasons stated by the County, (Dkt. No. 16 at 13-15), which this court now adopts, including that there was no evidence presented regarding (1) how the estimate from the stipulation of settlement was calculated; (2) the market trends between the date on which the estimated valuation was calculated and the subsequent vesting date; (3) whether the

---

[3] Kolath arrives at this figure by applying a 59% equalization rate to the $1,104,480 figure contained within the stipulation of settlement. (Dkt. No. 15 at 10.)

condition of the property was constant between the valuation date and the vesting date; or (4) how this valuation reconciles with other conflicting estimates in the record, like Annie Kolath's verification that the value of the property was actually much lower, (Dkt. No. 53 ¶ 5, Bankr. Ct. Case No. 16-90033-1). Given these uncertainties, Bankruptcy Court aptly described Kolath's proffered appraisal as "horse trading" by "two sides, both with something to gain or lose." (Dkt. No. 6, Attach. 1 at 108, 112.) The court agrees that

> [w]e have absolutely no idea what went into the horse trading, who started where, and where in that number is a valid number as opposed to a compromise, a settlement, to try and bring money into the municipality and give the debtor an opportunity to go forward. Whether that has anything to do with the value of the property is speculative at best.

(*Id.* at 108.) As such, Kolath failed to prove that it received less than a reasonably equivalent value in exchange for transferring the property to the County.

Given that Section 548(a)(1) requires the plaintiff to prove both elements, Kolath's failure to meet their burden on this element alone is enough to affirm Bankruptcy Court. Nonetheless, Kolath's arguments regarding the insolvency element also fail for many of the same reasons.

9

**B.     Insolvency (11 U.S.C. § 548(a)(1)(B)(ii)(I))**

After Kolath rested its case, Bankruptcy Court found "[t]here's been no proof whatsoever indicating that the debtor was insolvent or was going to go into insolvency." (*Id.* at 112.)  At that time, Kolath could point to no record evidence that demonstrated its insolvency, but instead merely argued that Bankruptcy Court should take judicial notice that its insolvency could be presumed by the filing of its Chapter 11 action and asserted that "the property[,] which was the[ir] sole asset[,] . . . was taken from them and they no longer have it, all they had was debt, they had no assets." (*Id.*) However, now Kolath concedes, "[it] is not presumed to have been insolvent at the time of the [vesting date]" but rather "[it] was required to establish its insolvency during the 90 days prior to the [p]etition [d]ate in order to comply with [S]ection 548(a)(1)(B)'s requirement[s]." (Dkt. No. 15 at 7.)

In order to satisfy this element, Kolath relies on its petition,[4] and pre-trial stipulation of facts.  (Dkt. No. 53, Bankr. Case No. 16-90033-1.) Kolath posits that because the pre-trial stipulation of facts asserted that

---

[4] Although Kolath fails to cite to this "petition," the court construes this reference to be to its adversary complaint.  (Dkt. No. 1, Bankr. Ct. Case No. 16-90033-1.)

10

Greene County Court granted summary in a tax foreclosure proceeding, and conveyed the property to the County in satisfaction of the outstanding tax lien of $830,000, (*id.* ¶ 2), and a representative of the mortgagee of a mortgage on the property filed an affidavit in an unrelated Greene County Supreme Court foreclosure proceeding that, as of May 21, 2015, there was a balance of $3,565,290.42 owed on its mortgage secured by the property, (*id.* ¶ 7), "[t]his resulted in a total prepetition debt of $4,395,290.42 as of [the vesting date]." (Dkt. No. 115 at 7.) Kolath again relies on the appraisal of $3,900,000 that rested on the assumption that the property was operating as a going concern, (Dkt. No. 6, Attach. 1 at 71), and its petition that contained an allegation by its attorney that the property was Kolath's sole asset, (Dkt. No. 1 ¶ 7, Bankr. Case No. 16-90033-1). Kolath argues that "[f]or the purposes of establishing [its] insolvency . . . , the Court should have used [its] $3,900,000[] valuation of the [p]roperty . . . and then appl[ied] a basic retrojection analysis of [its] financial status on the [vesting] date." (Dkt. No. 115 at 8.) Kolath concludes that this would have clearly resulted in a finding that it was insolvent on the vesting date. (*Id.*)

      The above-findings alone, regarding the lack of reliable evidence

11

concerning the property's value on the vesting date, are enough to refute Kolath's arguments on this ground as well. Moreover, it was not clear error to conclude that Kolath's reliance on the stipulation to prove its insolvency was unavailing given that the stipulation does not demonstrate the actual unpaid balance of any other secured indebtedness that may have been encumbering the property on the vesting date. Likewise, Kolath's insistence that its complaint proved that it did not have any other assets is not convincing. To be sure, Kolath's attorney alleged in the complaint that "[t]he property remaining in the ownership and control of [Kolath] after [the transfer of its property to the County] was an unreasonably small capital and the fair value of the property remaining in the ownership of [Kolath] after such transfer was well less than the sum of [its] debts." (Dkt. No. 1 ¶ 7.) However, just like the statements made by Kolath's counsel at trial, an attorney's allegation in a complaint is not evidence capable of proving that the property was Kolath's only asset on the vesting date. There was simply no reliable evidence presented at trial that Kolath was insolvent on the vesting date or made insolvent by the transfer of the property to the County.

  In sum, Bankruptcy Court considered all of the evidence presented

by Kolath and properly found that it failed to satisfy its burden of proof with regard to both of the required elements under 11 U.S.C. § 548. In the absence of any clear error, the court affirms.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the July 28, 2017 order of Bankruptcy Court (Dkt. No. 3, Attach. 12) is **AFFIRMED**; and it is further

**ORDERED** that the clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 28, 2018
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge